# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)



CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

January 31, 2024

LETTER TO COUNSEL

RE:   *Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
      Civil No. GLS-22-2555

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Thomas C. ("Plaintiff"), and the Social Security Administration ("SSA" or "the Agency"). (ECF Nos. 13, 15). The Plaintiff also filed a Reply. (ECF No. 16). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2023).

The Court must uphold the decision of the Social Security Administration if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

## I.      BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, on October 4, 2017. In both applications, the Plaintiff alleges that disability began on June 15, 2017. (Tr. 18). These claims were initially denied on April 9, 2018, and upon reconsideration, denied again on August 13, 2018. (*Id.*). On September 11, 2018, Plaintiff filed a written request for a hearing, which was granted. A hearing was conducted on November 8, 2019, by an Administrative Law Judge ("ALJ"). (*Id.*). On December 19, 2019, the ALJ found that the Plaintiff was not disabled under sections 216(i) and 223(d), and 1614(a)(3)(A) of the Social Security Act. (Tr. 18-32).

On July 31, 2020, the Appeals Council denied Plaintiff's request for review. (Tr. 1). On September 24, 2020, Plaintiff appealed to the U.S. District Court for the District of Maryland. (Tr. 1073). On October 7, 2021, the Agency moved for voluntary remand under sentence four of 42

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 2

U.S.C. § 405(g), asserting that remand is warranted for further administrative proceedings and a new decision by the ALJ. (Tr. 1074). The Court granted the Agency's "Consent Motion for Remand."[1] (Tr. 1073).

Thereafter, on January 28, 2022, the Appeals Council issued a Remand Order vacating the SSA denial of Plaintiff benefits and remanding the case back to the ALJ for resolution of issues related to Plaintiff's need for an assistive device and further consideration of medical evidence of the record. (Tr. 1077-82). On June 14, 2022, the ALJ conducted the remand hearing to give further consideration to Plaintiff's maximum residual capacity and to provide rationale with specific references to evidence of record in support of Plaintiff's assessed limitations. (Tr. 1046-72). On August 5, 2022, the ALJ issued a partially favorable decision, namely the ALJ found Plaintiff's disability onset date to be January 4, 2019, not June 15, 2017.[2] (Tr. 1015-33). The ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1012). *See also* 20 C.F.R. §422.210(a).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

### A.  The Standard

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a). *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other

---

[1] The former judge assigned to this action, the Honorable J. Mark Coulson, granted the Agency's Consent Motion to Remand. (ECF No. 19).
[2] The parties do not dispute the ALJ's finding that the Plaintiff became disabled under sections 216(i) and 223(d), and 1614(a)(3)(A) of the Social Security Act beginning January 4, 2019. As such, the relevant period at issue is June 15, 2017 to January 4, 2019.

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 3

than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

### B.  Analysis Performed on Remand of the Instant Case

On remand, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 1015-33). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2017, the alleged onset date of Plaintiff's disability. (Tr. 1018). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, degenerative disc disease, arthritis of the shoulders and knees, hemangioma, embolism, diabetes mellitus, lumbar radiculopathy, and bilateral sensorineural hearing loss. (*Id.*). The ALJ found these impairments were severe because these impairments significantly limit Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that since June 15, 2017, none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 1021).

Taking into account Plaintiff's severe impairments, the ALJ performed two RFC assessments: one RFC assessment before January 4, 2019,[3] and another after that date. (Tr. 1023, 1029).

First, the ALJ determined that *prior to* January 4, 2019, Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is further limited to: never crawling or climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and climbing ramps or stairs; never being exposed to hazards, such as dangerous moving machinery and unprotected heights; occasional operation of foot controls bilaterally; frequent handling bilaterally; occasional exposure to dust, odors, gases, fumes, and poor ventilation; can hear and understand simple oral instructions; can communicate simple information; must work in an environment with moderate noise intensity level, as defined in the Dictionary of Occupational Titles; *and would need a cane to ambulate to and from the workstation.*

---

[3] This date represents the date of Plaintiff's visit to his pain management provider, during which an examination revealed impaired balance that required Plaintiff to use a cane to ambulate and to balance.

(Tr. 1023) (emphasis supplied). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 1031).

Before making a finding regarding step five, the ALJ conducted a hearing. (Tr. 1046-72). At that hearing, a vocational expert ("VE") testified, relying upon "The Dictionary of Occupational Titles," and upon her education, background, training, and experience as a vocational rehabilitation counselor. The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff—and with his RFC—would be able to perform any work in the national economy. (Tr. 1067-68). The VE opined that the hypothetical individual would be able to perform work as a produce weigher, price marker, or sorter. (*Id.* at 1068). Next, the ALJ asked the VE whether the additional limitation of needing a cane to ambulate to and from the workstation would change the type of work that the hypothetical individual could perform. (*Id.*). The VE opined that if the individual could stand without the use of the cane, they could do the work. The VE further opined that "but if they needed it, these jobs do not require that they necessarily go from place to place, so they could … do the work offered." (*Id.*). Finally, the ALJ asked the VE about employer tolerances for being off task and absenteeism. The VE opined that an individual could perform unskilled work if they are on task 85% of the time but no work if off task greater than 15% of the time. (*Id.*). With respect to absenteeism, the VE opined that if an individual who performs unskilled work misses three or four days a month, then their employment could be in question. (*Id.* at 1069-70).

At step five, the ALJ ultimately determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Accordingly, the ALJ determined that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, such that a finding of "not disabled" was appropriate prior to January 4, 2019. (Tr. 1031). Put another way, the ALJ found that Plaintiff was not disabled between June 15, 2017 and January 4, 2019. (Tr. 1033).

Next, the ALJ determined that *beginning on* January 4, 2019, the Plaintiff had the RFC to:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he is further limited to: never crawling or climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and climbing ramps or stairs; never being exposed to hazards, such as dangerous moving machinery and unprotected heights; occasional operation of foot controls bilaterally; frequent handling bilaterally; occasional exposure to dust, odors, gases, fumes, and poor ventilation; can hear and understand simple oral instructions; can communicate simple information; must work in an environment with moderate noise intensity level, as defined in the Dictionary of Occupational Titles; *and requires a cane for ambulation and balance.*

(Tr. 1029) (emphasis supplied). At step four, the ALJ found that Plaintiff was unable to perform

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 5

any past relevant work. (Tr. 1032). During the hearing, the ALJ also asked the VE whether the additional limitation of needing a cane for ambulation and balance would change the type of work the hypothetical individual could perform. (*Id.* at 1069). In other words, the ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff—and with his RFC *after* the January 4, 2019 impaired balance diagnosis—would be able to perform any work in the national economy. (*Id.*). The VE testified that the individual could not do light work with that limitation. (*Id.*).

At step five, the ALJ ultimately determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 1033). Accordingly, the ALJ found that Plaintiff became disabled on January 4, 2019 and continues to be disabled. (*Id.*).

## III.   DISCUSSION

In requesting summary judgment, Plaintiff contends that substantial evidence does not exist to support the ALJ's determination that Plaintiff's disability onset date is January 4, 2019 and not June 15, 2017. In support of his argument, Plaintiff advances two arguments. First, Plaintiff contends that the ALJ failed to consider material medical evidence that Plaintiff suffered from impaired balance before the January 4, 2019 diagnosis. Thus, the ALJ's assessment of Plaintiff's RFC from June 15, 2017 until January 4, 2019 was erroneous, and remand is required. Second, Plaintiff contends that the ALJ failed to evaluate, at step-three of the sequential evaluation process, whether Plaintiff met or medically equaled the requirements of Listing 2.07 at any time prior to January 4, 2019. (ECF No. 13, "Plaintiff's Motion," pp. 12-18, 21-23).

The SSA counters that: (1) the ALJ's finding that Plaintiff was not disabled before January 4, 2019 is supported by substantial evidence; and (2) the ALJ reasonably concluded that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed in the Regulations. (ECF No. 14, "SSA's Motion," pp. 6, 11).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's argument regarding the ALJ's assessment of whether Plaintiff's impairment met or medically equaled Listing 2.07. Accordingly, I find remand appropriate, for the reasons set forth below.

### A.  The ALJ's Assessment of Plaintiff's RFC

As a preliminary matter, the SSA has created a system through which it defines the physical exertional requirements for jobs in the national economy. Within this system, there are five categories in which a job may fall: (1) sedentary; (2) light; (3) medium; (4) heavy; and (5) very heavy. *See* 20 C.F.R. § 404.1567(a)-(e); 20 C.F.R. § 416.967(a)-(e). "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 6

A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Pursuant to 20 C.F.R. § 404.1545(a)(1), an ALJ must devise an RFC that captures a claimant's ability to do physical and/or mental work activities for a sustained period of time (i.e., sedentary, light, medium, heavy, or very heavy work), given the claimant's limitations. An ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).

In fashioning an RFC, the ALJ must outline the work an individual can perform and make findings regarding an individual's exertional limitations. The Fourth Circuit requires an ALJ's findings pertaining to a claimant's RFC to be "accompanied by 'a narrative discussion describing' the evidence supporting" each conclusion. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). A proper RFC narrative consists of: "(1) evidence; (2) [a] logical explanation; and (3) [a] conclusion." *Dowling*, 986 F.3d at 388. In the narrative discussion, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citation omitted). This involves "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. 34,478 (July 2, 1996) (internal quotation marks omitted)). An ALJ's logical explanation is just as important as the other two components of the RFC analysis. *Rosalind M. v. Saul*, Civ. No. GLS-19-2791, 2020 WL 6450503, at *2 (D. Md. Nov. 3, 2020). Finally, in *Dowling*, the court held that an ALJ errs when his RFC analysis focuses only on the "intensity and persistence" of claimant's symptoms and "the extent to which the alleged severity of those symptoms [was] supported by the record." 986 F.3d at 388. This kind of "symptom evaluation" is a different kind of analysis than SSR 96-8p and other regulations require for a proper RFC assessment. *Id.*

Plaintiff argues that the ALJ erred in finding that Plaintiff's disability date began on January 4, 2019 because there is substantial evidence that supports that Plaintiff had impaired balance before that date. (Plaintiff's Motion, pp. 15-18). SSA counters that substantial evidence supports the ALJ's RFC assessment and finding that Plaintiff required a cane for "ambulation and balance" beginning on January 4, 2019. (SSA's Motion, pp. 6-7).

In this case, the ALJ determined that, before January 4, 2019, Plaintiff had the RFC to perform light work and "would need a cane to ambulate to and from the workstation." (Tr. 1023). In reaching this conclusion, the ALJ considered "all symptoms" "medical opinions" and "prior administrative medical findings." Specifically, the ALJ considered Plaintiff's testimony that he could not walk more than 50 feet, experienced sharp pain after standing for two or three minutes, and would not be able to walk at all if he pushed himself. (Tr. 1023). The ALJ also analyzed imaging of Plaintiff's lower extremities, balance tests, electromyographies ("EMG"), and emergency department records to determine that Plaintiff's cane was not medically necessary until

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 7

his diagnosis of impaired balance on January 4, 2019. (*Id.* at 1023-27). Finally, the ALJ examined the medical records from Plaintiff's physical therapist, orthopedist, primary care physician, and pain management provider to determine that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully supported before January 4, 2019. *See, e.g.,* Tr. at 1028 (finding "[t]he records support some limitation in his ability to lift/carry and perform postural activities, but Dr. Callahan's opinion is too vague to be fully supported."); Tr. at 1027 ("the undersigned finds it inconsistent with other observations by Dr. DeMuth, indicating normal gait and … unsupported by other records which generally show the claimant as ambulating without a cane despite some balance problems. "). While Plaintiff argues that the ALJ's decision is contradictory, the Fourth Circuit has long held that a reviewing court does not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. *Craig v. Chater*, 76 F.3d 589; *see also, Shinaberry v. Saul*, 952 F.3d 113 (4th Cir. 2020). The court declines to do so here.

Thus, after reviewing the ALJ's decision, the Court finds that the ALJ adequately built a logical bridge linking evidence to her ultimate conclusion that Plaintiff's impaired balance began on January 4, 2019. Accordingly, the ALJ's RFC analysis was supported by substantial evidence.

### B.  The ALJ's Determination Regarding Listing 2.07

For a claimant's impairment to meet a section of the Listings, it must "satisfy all of the criteria [set forth in that listing]," 20 C.F.R. § 404.1525(c)(3), or alternatively, "it can medically equal the criteria of a listing." 20 C.F.R. § 404.1525(c)(5). At step three of the sequential evaluation process, "an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F.Supp.2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)); *see also Fox v. Colvin*, 632 Fed. App'x. 750, 755 (4th Cir. 2015). Indeed, [n]either the Social Security law nor logic commands an ALJ to discuss all or any of the listed impairments without some significant indication in the record that the claimant suffers from that impairment. *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (internal quotations omitted). However, where there is at least conflicting evidence in the record as to whether a claimant satisfies a listing, the ALJ cannot summarily conclude that a listing is not satisfied. *See Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

To satisfy Listing 2.07, a claimant must show:

> Disturbance of labyrinthine-vestibular function (Including Ménière's disease), characterized by a history of frequent attacks of balance disturbance, tinnitus, and progressive loss of hearing. With both A and B:
>
> A.  Disturbed function of vestibular labyrinth demonstrated by caloric or other vestibular tests; and
> B.  Hearing loss established by audiometry.

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 8

20 C.F.R. Part 404, Subpart P, App. 1, § 2.07.

Plaintiff urges the Court that remand is necessary because the ALJ failed to determine whether his vertigo, loss of balance, tinnitus, and hearing loss met or medically equaled the requirements of Listing 2.07, and there is ample evidence to support that Plaintiff meets this Listing. (Plaintiff's Motion, pp. 21-23). SSA counters that Plaintiff failed to meet his burden that he satisfied all of the criteria of Listing 2.07. Alternatively, SSA argues that the ALJ considered Listing 2.07 when she reasonably concluded that Plaintiff's impairments did not meet or medically equal Listing 2.00. (SSA's Motion, pp. 11-15). The Court finds Plaintiff's argument persuasive. As set forth below, the ALJ evaluated Plaintiff's impairments under Listing 2.00, Special Senses and Speech, and Listing 2.10, Hearing loss not treated with cochlear implantation. (Tr. 1021-1022). While the SSA correctly argues that Listing 2.00 encompasses Listing 2.07, the Court ultimately finds that the ALJ erred at step three by failing to consider whether Plaintiff's impairments met or medically equaled Listing 2.07.

In this case, the ALJ considered Listing 2.00 in her evaluation of Plaintiff's diabetes mellitus. (Tr. 1021). As a general matter, it is not improper for an ALJ to consider additional listings in conjunction with Listing 9.00B5. However, such circumstances as it relates to Listing 2.00, require an ALJ to evaluate whether a plaintiff's diabetes mellitus causes diabetic retinopathy (a visual impairment). 20 C.F.R. Part 404, Subpart P, App. 1, § 9.00. Here, it would be improper for the ALJ to only evaluate Plaintiff's impairments under Listing 2.00 given that the ALJ determined that Plaintiff's hearing impairment was severe at step three.

Turning to Plaintiff's hearing loss, the ALJ determined that Plaintiff's impairment did not meet or medically equal Listing 2.10. To satisfy Listing 2.10, a claimant must show:

> A. An average air conduction hearing threshold of 90 decibels or greater in the better ear and an average bone conduction hearing threshold of 60 decibels or greater in the better ear, OR
> B. A word recognition score of 40% of less in the better ear.

20 C.F.R. Part 404, Subpart P, App. 1, § 2.10. With respect to Plaintiff's hearing loss under Listing 2.10, the ALJ opined:

> In this case, conduction testing was reported as revealing borderline normal hearing, with normal speech reception thresholds bilaterally and excellent word discrimination scores. The claimant's hearing loss therefore does not meet the requirements of this listing.

(Tr. 1022). In support of this finding, the ALJ clearly explained that she reviewed Plaintiff's conduction tests, and clearly articulated how she interpreted those tests to ultimately reach her conclusion. (*Id.*).

*Thomas C. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-2555
January 31, 2024
Page 9

However, the same cannot be said for the  ALJ's assessment of Plaintiff's impairments under Listing 2.07. Despite the fact that there is medical evidence that Plaintiff suffered from vertigo, balance attacks, tinnitus, and progressive hearing loss, s*ee, e.g.,* Tr. at 606, 613, 806, the ALJ did not clearly explain how she assessed this medical evidence in support of her conclusion that Plaintiff's impairments did not meet or medically equal Listing 2.07. *Radford*, 734 F.3d at 295. Instead, the ALJ's analysis of Listing 2.07 under Listing 2.00 related to visual impairments, and therefore is not supported by substantial evidence. Put another way, the ALJ should have performed a similar analysis of Listing 2.07 as she did with Listing 2.10 with respect to Plaintiff's hearing loss. Accordingly, the Court finds that remand is necessary for the limited purpose of determining whether Plaintiff's hearing loss prior to January 4, 2019 meets or medically equals Listing 2.07.

## IV.    CONCLUSION

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 13, 15) are **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff was not disabled prior to January 4, 2019, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge